**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
RICHARD FREDERICK KAISER, JR.,

                              Plaintiff,        **MEMORANDUM OF DECISION AND**
                                                          **ORDER**

                   -against-                           **23-CV-1162 (ST)**

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      In this appeal brought pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq* (the

"Act"), plaintiff Richard Frederick Kaiser Jr. (the "Plaintiff" or "Mr. Kaiser"), challenges the final

determination of the Commissioner of the Social Security Administration (the "Defendant") that

Plaintiff was ineligible to receive Social Security disability benefits.   The parties filed cross

motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FRCP") Rule

12(c).   For the reasons discussed herein, the Court GRANTS Plaintiff's motion in part and

DENIES Defendant's cross-motion in its entirety.   This Court remands this matter to the

Commissioner for further proceedings consistent with this Memorandum and Order.

## BACKGROUND[1]

### I.    Plaintiff's ALJ Hearing Testimony

      Plaintiff testified at the initial August 6, 2018 ALJ hearing that he last worked as the

Director of Security at the Huntington Hilton Hotel. R. 191, ECF 13 [Administrative Transcript].

---

[1] For a discussion of this Court's individual practice with regards to social security cases, this Court incorporates by reference its previous decision in *Dovale v. Comm'r of Soc. Sec.*, No. 21-CV-2490 (ST), 2023 WL 7130689, at *1 (E.D.N.Y. Oct. 30, 2023).

After working as Director of Security, Mr. Kaiser completed a two-year associate degree in nursing and worked as a nurse.  *Id.* at 192-93.

Plaintiff further testified that he is no longer able to work because of pain in his back and legs.  R. 197-98.  The pain in his knees is particularly severe and causes instability.  R. 199-200. Plaintiff must elevate his legs three to four times daily for at least 60 minutes and use an ice machine and TENS machine for pain relief.  *Id.* at 201-02.

Plaintiff also testified that he can usually sit for no more than an hour before having lower back pain.  *Id.* at 202.  Plaintiff was scheduled to undergo surgery on his back, but he had a heart attack a few weeks prior, causing the surgery to be cancelled.  *Id.* at 203.  Mr. Kaiser was advised to forgo back surgery given his heart issues.  *Id.*  Following his heart attack, Mr. Kaiser claims that he lacks energy, suffers from chest pains, and is lightheaded.  *Id.* at 204.  The medications he takes for his heart condition cause drowsiness.  *Id.*

Plaintiff does not play sports, do volunteer work, care for children, or participate in activities outside of the home except for a monthly meeting of the Fraternal Order of Police that he sometimes attends.  *Id.* at 204-05.  Mr. Kaiser sometimes does some yard work with a self-propelled lawnmower and when he cannot do so, he relies on friends or neighbors.  *Id* at 205.  His wife does laundry and grocery shopping for him.  *Id.* at 206.  Plaintiff has difficulty bending and lifting but testified he could probably lift about 30-40 pounds if it did not require bending.  *Id.* However, he cannot remember the last time he lifted that amount of weight.  *Id.*  Plaintiff can lift a gallon of milk, walk about 10-15 minutes, and stand for approximately 15 minutes.  *Id.* at 207. Plaintiff can sit for no more than an hour due to pain.  *Id.* at 202 and 207.  Finally, Plaintiff spends most of his day laying down to help alleviate the pain in his back and knees.  *Id.* at 208-09.

## II.      Plaintiff's Medical History[2]

Plaintiff claims that the onset date of his disability is January 10, 2011.  R. 10, 13, 219, ECF 13 [Administrative Transcript].  On this date, Plaintiff was 46 years old.[3]  *Id.* at 219.  Again, Plaintiff testified at the August 6, 2018 hearing that he was previously employed as the Director of Security at the Hilton Long Island Huntington Hotel.  R. 191.[4]  After working as Director of Security, Plaintiff completed a two-year associate degree in nursing and then was employed as a nurse at Northwell Health (previously known as Northshore University Hospital).  R. 192-93.

The Court presumes familiarity with Plaintiff's medical history and so limits its restatement here to the portions of the record essential to analyze the ALJ's determination and whether remand is appropriate.  Plaintiff has, for a number of years, sought treatment for his physical conditions from a variety of treatment centers and professionals, leading to a large volume of medical examinations and recommendations from various professionals.   These conditions include orthopedic impairments involving Plaintiff's back and knees, as well as cardiac impairment.  R. 219 and 843.  The most recent ALJ decision (dated November 25, 2022)[5] examines the medical records concerning the following medical professionals: Dr. Charles Kaplan, Dr. July Gaysynsky, Dr. Stan Avshalumov, Dr. Debora Mottahedeh, Dr. Morton Tavel (cardiologist), Dr. John Fkiarsas, Dr. Richard S. Obedian, Dr. Lee Kupersmith, Dr. David Benatar (workers' compensation independent medical examiner), and Dr. John Waller (workers' compensation independent

---

[2] Notably, as discussed *infra*, no medical opinions in the record provide a function-by-function analysis for the RFC determination, which is relevant to this Court's decision to remand.

[3] Plaintiff was 58 years old at the most recent ALJ hearing held on October 20, 2022 (decided November 25, 2022) before ALJ Patrick Kilgannon.  R. 843.

[4] Plaintiff also testified at the August 6, 2018 hearing that he did the "same job" at a different location for "Sunstone [phonetic] Hotel Properties" from 2003-2006, but the Administrative Law Judge did not ask further questions about this job since it involved the same work as the Hilton Long Island Huntington Hotel discussed above.  R. 192.

[5] As discussed *infra* regarding the Administrative History, the most recent hearing was held on October 20, 2022 (decided November 25, 2022) before ALJ Patrick Kilgannon, *see* R. 837-850, and the previous ALJ hearing was held on August 6, 2018 (decided October 25, 2018) before ALJ Michael Carr.  *See* R. 10-20.

medical examiner.  The Court will summarize their findings and will also note pertinent MRI medical evidence as well.[6]

### a. Relevant MRIs from 2011

"An MRI of the lumbar spine conducted on January 11, 2011, revealed: no disc herniation or stenosis a[t] the L1-2, L2-3, L3-4 or L4-5 levels with exiting nerve roots intact; a moderate sized disc herniation at L5-S1, with some impingement of the descending right S1 nerve root, with spondylitic change and disc desiccation, mild foraminal stenosis, and mild facet hypertrophy." *See* Joint Statement of Facts at 3, ECF 17 (citing R. 426).

"An MRI of the left knee completed on April 14, 2011, revealed frayed radial tearing of the posterior horn and body of the medial meniscus and arthropathy preferential to the patellofemoral articulation and medial compartment." *Id.* (citing R. 424).

### b. Dr. Lee Kupersmith

"On May 31, 2011, Mr. Kaiser was examined by Dr. Lee Kupersmith." *Id.* at 3. "An examination of the lumbar spine revealed tenderness to palpation; decreased range of motion; and positive straight leg raising on the right, seated and supine, but negative on the left." *Id.* "Strength was assessed to be 5/5 in bilateral lower extremities, and deep tendon reflexes were 2+ throughout." *Id.* "Dr. Kupersmith opined that Mr. Kaiser is limited to sedentary work with lifting no more than 10 pounds, but no restrictions with regard to walking, sitting, or standing." *Id.* "Dr. Kupersmith assessed Mr. Kaiser's prognosis as 'fair' and that he had not reached maximum medical improvement." *Id.* (citing R. 465-69).[7]

---

[6] As noted above, the Court presumes familiarity with Plaintiff's medical history and so limits its restatement here to the portions of the record essential to analyze the ALJ's determination.  When noting this information, this Court will refer to the parties' Joint Statement of Facts, ECF 19.  *See* Joint Statement of Facts, ECF 19.  To that end, while the pages of the Joint Statement of Facts are not numbered, this Court will refer to the page numbers of the pdf file itself.  Finally, the Court will mostly refer to the medical appointments and records chronologically, but will group multiple appointments to the same doctor together for ease of reference.

[7] For ease of reference, the statement about Plaintiff's ability to do sedentary work is located at R. 469.

*c. Dr. Charles Kaplan*

"Treating physiatrist Dr. Charles Kaplan evaluated Mr. Kaiser on December 23, 2011.  Mr. Kaiser reported a few weeks of relief with trigger point injections, and that his electrical stimulation treatment provided mild relief."  *Id.* at 4 (citing R. 660).  "An examination revealed: myofascial trigger points to the bilateral lumbar paraspinal muscles; decreased lordosis; tenderness to palpation to the bilateral paravertebral; decreased lumbar spine range of motion; positive sitting root test bilaterally; and decreased right extensor hallucis longus (EHL) muscle strength, but 5 out of 5 strength otherwise."  *Id.* (citing R. 661).

*d. Dr. David Benatar*

First, "Mr. Kaiser was evaluated by Dr. David Benatar on June 26, 2012, at the behest of the Workers Compensation Board.  An examination demonstrated: a normal gait, and ability to walk on heels and toes, tenderness to palpation of the lumbar paraspinals on the right and over the right sciatic notch; decreased lumbar spine range of motion; positive straight leg raising bilaterally; mild lumbar spasm; left knee effusion; positive left knee patellar grind test; and some left knee medial tenderness."  *Id.* at 4 (citing R. 470-72).  "Motor strength and sensation were intact and reflexes were 2+.  Dr. Benatar opined that Mr. Kaiser could not return to 'full duty,' but could do light duty work, with "limitations on lifting, carrying, and bending as well as observation of lumbar ergonomics."  *Id.* (citing R. 472-73).

Second, Dr. Benatar evaluated Mr. Kaiser again on May 7, 2013.  *Id.* at 5 (citing R. 451).  "An examination showed: minimally antalgic but non-myelopathic gait; ability to heel rise and toe rise, positive straight leg raising on the right but negative on the left; tenderness to palpation of the lumbar spine; decreased lumbar spine range of motion; pain with lumbar extension; normal patellar reflexes but decreased Achilles reflexes; decreased sensation in the right lower extremity not

following an organic pattern (but intact sensation on the right); and intact motor strength bilaterally." *Id.* (citing R. 453). "Dr. Benatar diagnosed lumbar sprain/strain, aggravating disc herniation with complaints of lumbar radiculopathy." *Id.* Notably, "[h]e opined that Mr. Kaiser had a fair prognosis and 'cannot return to full duty at this time,' but could return to 'light duty work' with lifting and carrying no more than 20 pounds, and no ladders or unprotected heights." *Id.* (citing R. 453-54). "It was Dr. Benatar's opinion that epidural treatment should be approved for Mr. Kaiser." *Id.*

Third, Mr. Kaiser was evaluated by Dr. Benatar on October 15, 2013. *Id.* at 6 (citing R. 489). "Clinical findings included: a non-antalgic, non-myelopathic gait, ability to heel and toe walk, tenderness to palpation of the lumbar paraspinals; mild lumbar spasm; decreased lumbar range of motion; decreased sensation in the right lower extremity that Dr. Benatar could not explain on an organic basis; normal (2+) Patellar and Achilles reflexes; intact and symmetric motor strength; left knee instability to anterior drawer; minimal left knee instability to Lachman; very mild left knee medial tenderness; and mildly positive left knee patellar grind with pain and crepitus." *Id.* (citing R. 491). Notably, "Dr. Benatar opined that Mr. Kaiser could return to a light duty job where he was limited to lifting 20 pounds and carrying less than 10 pounds." *Id.* (citing R. 492).

Finally, Dr. Benatar evaluated Mr. Kaiser again on May 6, 2014. *Id.* at 7 (citing R. 456). The "[e]xamination revealed normal gait, with an ability to heel and toe walk, reduced range of motion in the lumbar spine with tenderness on palpitation and spasm, positive straight leg raise testing, but normal patella and Achilles reflexes and full strength." *Id.* at 7 (citing R. 457). "Dr. Benatar indicated that Mr. Kaiser's left knee had improved with the recent surgery and deemed that it was 'an effective surgery.'" *Id.* (citing R. 458). "Mr, Kaiser reported being able to drive,

go to the supermarket, and do some work around the house for up to one hour." *Id.* Importantly, "Dr. Benatar opined that Mr. Kaiser was able to do 'light duty work' and limited to carrying less than 10 pounds, lifting no more than 20 pounds, he needed to observe all ergonomics, *he should not sit or stand in the same position for greater than one hour*, and he should avoid ladders and unprotected heights." *Id.* (emphasis added).

  *e.  Dr. Debora Mottahedeh*

  "Mr. Kaiser began seeing treating pain management specialist Dr. Debora Mottahedeh at the New York Spine Institute on January 9, 2013." *Id.* at 4 (citing R. 657).  "A lumbar spine examination revealed myofascial trigger points to the bilateral lumbar paraspinal muscles; decreased lordosis; tenderness to palpation to the bilateral paravertebral and right gluteus medius; decreased lumbar spine range of motion; positive sitting root test bilaterally; and decreased right EHL muscle strength, with full (5/5) strength in the remaining muscles." *Id.* (citing R. 658).  "Dr. Mottahedeh noted that Mr. Kaiser experienced good relief with trigger point injections." *Id.* at 5 (citing R. 657).  "Sensation was intact to pin prick and light touch and deep tendon reflexes were 2+. Injections were administered to the right paralumbar paraspinal muscles and right gluteal muscles." *Id.* (citing R. 658).  "Mr. Kaiser [returned] to Dr. Mottahedeh on February [8], March 4, April 1, May 8, June 10, July 8, August 14, September 17, and November 6 and 20, 2013, for low back pain and left lower extremity pain." *Id.* (citing R. 654, 651, 648, [645], 642, 639, 636, [633], [630], and [627] respectively).[8]

  *f.  Dr. July Gaysynsky*

  On November 13, 2013, Plaintiff followed up with his primary care provider, July

---

[8] Note, the alterations above are the record cites that were missing in the Joint Statement of Facts for the dates the parties listed.  To be clear, Mr. Kaiser had subsequent follow-up visits with Dr. Mottahedeh beyond the dates listed, but this Court has only included the dates cited in the parties' Joint Statement of Facts at 5, ECF 17.

Gaysynsky, at Quality Health Family Medical Care PC.  R. 546.  Specifically, the progress note shows that Plaintiff sprained his left knee at his work place on August 25, 2010 and that his condition did not improve with physical therapy.  *Id.*  The MRI of the left knee revealed a meniscus tear, which required an arthroscopic procedure.  *Id.*  However, the examination showed that Plaintiff was not in acute distress.  *Id.*  Plaintiff's muscle strength was normal 5/5 in all muscle groups, but he had a left limp and left knee joint tenderness.  R. 547.  Otherwise, there were no neurologic deficits noted and Plaintiff was cleared for left knee arthroscopy and meniscectomy, which took place on December 3, 2013.  R. 547 and 552.

> g. *Dr. Stan Avshalumov*

"On December 3, 2013, Mr. Kaiser underwent left knee arthroscopy with partial meniscectomy, performed by Dr. Stan Avshalumov."  *Id.* at 6 (citing R. 552).

"Upon post-procedure follow-up with Dr. Avshalumov on January 8, 2014, Mr. Kaiser complained of worsening left knee pain."  *Id.* (citing R. 508).  "Examination revealed full motor strength and muscle tone in the lower extremities."  *Id.* (citing R. 509).  "There was tenderness noted in both knee[s], but no swelling."  *Id.*  "Dr. Avshalumov noted that '[s]ince the procedure, the patient is feeling better.'"  *Id* (citing R. 508).  "Dr. Avshalumov recommended that he only bear weight on his knee as tolerated with analgesia as needed for pain, he should apply ice, and he should elevate his legs as needed."  *Id.* (citing R. 509).

"An MRI of the right knee completed on January 11, 2014 revealed extensive tear of the medial meniscus with meniscal material flipped into the region of the intercondylar notch; patella alba, bipartite patella with narrowing of the lateral patellar fact; chondromalacia patella diffusely; trace effusion; and popliteal cyst."  *Id.* at 6-7 (citing R. 556).

"On February 21, 2014, Mr. Kaiser reported continued pain in his right knee, and frequent catching and locking while walking and with prolonged standing.  He rated the current intensity as a 1/10." *Id.* at 7 (citing R. 511).  "At times, his symptoms were severe enough to interfere with normal activities of daily living. His right knee showed 4/5 motor strength, with intact sensation and normal reflexes." *Id.* (citing R. 511-13).  "He was positive for [the] McMurry test but negative for anterior drawer, posterior drawer, Lachmann, patellar apprehension test, and MCL and LCL stress maneuvers. Left knee examination was unremarkable." *Id.* (citing R. 512-14).

   *h.  Dr. John F. Waller*

"Dr. John F. Waller evaluated Mr. Kaiser on June 29, 2015, at the behest of the Workers Compensation Board." *Id.* at 9 (citing R. 475).  "An examination of the lumbar spine revealed: mild tenderness to palpation of the paralumbar muscles; decreased range of motion; and positive leg raising on the right. Mr. Kaiser displayed a normal gait, muscle strength was 5/5 in the lower extremities with normal reflexes." *Id.* (citing R. 479).  "Knee examination revealed full range of motion bilaterally, with negative McMurray and Patella tracking tests." *Id.* (citing R. 480).  "Dr. Waller indicated that further treatment was warranted as Mr. Kaiser had not reached maximum medical improvement." *Id.* (citing R. 481).  "Dr. Waller opined that Mr. Kaiser could perform sedentary work, 'exerting' up to 10 pounds." *Id.* (citing R. 481-82).

"Dr. Waller evaluated Mr. Kaiser again on February 25, 2016." *Id.* at 9 (citing R. 435). "An examination of the cervical spine revealed: mild tenderness to palpation of the paracervical muscles; and decreased bilateral lateral flexion and an examination of the lumbar spine revealed mild tenderness to palpation of the paralumbar muscles; decreased flexion; and pain with extension." *Id.* (citing R. 438).  "Muscle strength in the lower extremities was 5/5, reflexes were normal, and sensation was within normal limits." *Id.*  "Examination of the knees revealed normal

range of motion bilaterally, negative McMurry, Lachman and Patella tracking tests bilaterally." *Id.* (citing R. 438-39). "Dr. Waller concluded that there were no objective clinical findings of spinal pathology or radiculopathy and therefore categorized Mr. Kaiser's spinal impairment as a soft tissue condition with a 'severity ranking level of NONE.'" *Id.* at 9-10 (citing R. 439-40). "Dr. Waller stated that there was no need for physical therapy and that Mr. Kaiser should be weaned off pain medication." *Id.* at 10 (citing R. 440). Notably, "Dr. Waller opined that Mr. Kaiser could *[sit] and stand for one hour but could otherwise return to work with no restrictions*." *Id.* (emphasis added) (citing R. 441).

### i. *Dr. John Fkiaras*

"Dr. John Fkiaras evaluated Mr. Kaiser, at the behest of the Administration, on July 16, 2016." *Id.* at 11 (citing R. 826). "Positive clinical findings included: difficulty heel walking; 1/3rd squat; decreased lumbar spine range of motion; pain to palpation of the lumbar spine; positive straight leg raising on the right, seated and supine; and amputation of the DIP joint of the fourth digit of the left hand." *Id.* (citing R. 827-28). "Examination findings were otherwise normal, including normal gait, ability to walk on toes without difficulty, full (5/5) strength in upper and lower extremities, no sensory deficits, normal reflexes, and full range of motion in all joints, including bilateral knees." *Id.* (citing R. 828). "Mr. Kaiser reported that he cooked five times per week, cleaned twice a week, does light shopping with assistance, and was able to bathe and dress." *Id.* (citing R. 827). "Dr. Fkiaras opined that Mr. Kaiser was moderately limited in lifting, carrying, pushing, pulling, and bending, [and] *he has moderate to severe limitations in squatting, kneeling, and crouching, and he must avoid unprotected heights*." *Id.* (citing R. 829) (emphasis added).

### j. *Dr. Richard S. Obedian*

Dr. Richard S. Obedian examined Plaintiff for the purposes of Plaintiff's workers'

compensation claim.  Dr. Obedian provided that Plaintiff remains disabled with a partial marked disability of 75%.  R. 1326.  Moreover, in a report dated October 14, 2022, Dr. Obedian reported that the claimant is unable to sit, stand and walk or engage in postural activities, is able to occasionally lift/carry 20 pounds, and has manipulative limitations.  R. 1781-84.  These limitations are since January 16, 2019, the date Dr. Obedian first examined the Plaintiff.  R. 1781.

    *k. Dr. Morton E. Tavel*

"At the October 2022 hearing, cardiologist Morton E. Tavel, M.D. testified that, based on his review of the record, Mr. Kaiser did not have any limitations due to his cardiac impairment, and therefore it was non-severe."  *Id.* at 11 (citing R. 861-63).  To be clear, a cardiac CT was completed on July 28, 2016, following Plaintiff's complaints of "active chest tightness, [and] revealed patent stents in the left anterior descending and posterior descending artery; nonobstructive plaques in the mid anterior descending, ostial second diagonal and right coronary artery; ectatic segments in the proximal and distal right coronary artery."  *Id.* (citing R. 1093-94 and 1109).

## III.   Vocational Expert Testimony ("VE")

Diane Durr ("VE Durr") testified before the ALJ at the October 20, 2022 hearing.  *See* R. 864-66.[9]  During the first hearing on August 6, 2018, Vocational Expert Michael Klein ("VE Klein") testified that "Mr. Kaiser's past employment consisted of Manager of Internal Security, which is classified as a light exertional job, but was performed at the medium exertional level; and, Registered Nurse, which is a medium skilled job, performed at the heavy exertional level."  *Id.* at 12 (citing R. 210).  Furthermore, VE Durr affirmed VE Klein's findings regarding Mr. Kaiser's past employment.  *Id.* (citing R. 865).

---

[9] To clarify, the Court notes that the Joint Statement of Facts at 12 indicates the hearing was on October 20, *2021*, but the 2021 date is a typographical error.  *See* R. 860 (indicating the hearing commenced on October 20, 2022).

The ALJ asked the VE to consider a hypothetical individual with the following limitations:

- can lift and carry up to 20 pounds occasionally and 10 pounds frequently;
- can sit for 6 hours and stand or walk for 6 hours in an 8-hour workday with normal breaks;
- can occasionally climb ramps and stairs;
- can occasionally balance and stoop;
- must avoid climbing ladders, ropes and scaffolds, kneeling, crouching, crawling and exposure to unprotected heights.

*Id.* (citing R. 865).  Finally, the VE testified that this hypothetical individual would be able to perform Mr. Kaiser's past work as a director of security as customarily performed, but not as performed by Mr. Kaiser.  *Id.* (citing R. 866).

## IV.    Administrative History.

Plaintiff filed his initial claim for disability on May 10, 2016, alleging a disability onset date of January 10, 2011.  R. 219 [Disability Determination Explanation].  Plaintiff sought disability benefits due to issues involving his back, heart and both knees.  *Id.*  On August 17, 2016, the state agency denied Plaintiff's application and Plaintiff requested a hearing.  R. 242 and 254.  On August 6, 2018, Plaintiff appeared while represented by counsel before Administrative Law Judge ("ALJ") Michael Carr.  *See* R. 183-217 [Hearing Transcript].  The ALJ issued an unfavorable decision on October 25, 2018 and found that Plaintiff was not disabled.  R. 7-24.

Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  R. 13 (¶2).  The ALJ further found that Plaintiff had the following severe impairments through the date last insured: "coronary artery disease status post stent placement, lumbar radiculopathy, lumbar disc displacement, myofascial pain syndrome, torn meniscus of left and right knee status post-surgical repairs and cervical spine disc herniation."  *Id.* (¶3) (citing 20 CFR 404.1520(c)).  However, the ALJ further concluded that, through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526." *Id.* (¶4).

Additionally, after reviewing the record, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: "[t]he claimant occasionally can climb ramps and stairs, balance, and stoop.  He cannot climb ladders, ropes and scaffolds.  He cannot kneel, crouch and crawl.  The claimant cannot work around unprotected heights." *Id.* at 14 (¶5).

Finally, the ALJ concluded that while Plaintiff was unable to perform any past relevant work under 20 CFR 404.1565, considering Plaintiff's "age education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." *Id.* at 18-19 (¶¶6-10) (citing 20 CFR 404.1569 and 404.1569a).

The ALJ's Decision became final when the Appeals Council denied Plaintiff's request for review on October 16, 2019.  R. 1, 4.

Plaintiff then filed a civil action in the United States District Court for the Eastern District of New York.  *See Kaiser, Jr. v. Commissioner of Social Security*, 19-cv-07029-JMA-ARL.  On September 13, 2021, the Honorable Arlene R. Lindsay issued a Report and Recommendation, which recommended that: (1) Plaintiff's motion for judgment on the pleadings be granted in part, and denied in part; (2) Defendant's cross-motion for judgment on the pleadings be denied and (3) the case be remanded to the Commissioner for further proceedings consistent with the Report and Recommendation.  *See Kaiser v. Saul*, No. CV197029JMAARL, 2021 WL 4463620, at *1 (E.D.N.Y. Sept. 13, 2021), *report and recommendation adopted sub nom. Kaiser v. Kijakazi*, No. 19CV7029JMAARL, 2021 WL 4463540 (E.D.N.Y. Sept. 29, 2021).

In short, Judge Lindsay concluded that: "[d]espite [Plaintiff's] testimony, and without citing any medical evidence to the contrary, the ALJ determined, in a conclusory manner, without any discussion of the seven strength demands necessary, that Plaintiff would be able to work an eight-hour day.  Absent a more specific assessment, the Court is *unable to determine* if the ALJ's RFC determination is supported by substantial evidence." *See Kaiser*, 2021 WL 4463620, at *13 (emphasis added).[10]

The Honorable Joan M. Azrack adopted Judge Lindsay's Report and Recommendation on September 29, 2021.  *See* ECF 17 in Case No. 19-cv-07029.

On May 18, 2022, the Appeals Counsel issued an Order, which vacated the prior decision and remanded the case for further administrative proceedings pursuant to the District Court's decision.  *See* R. 868-70.

On October 20, 2022, the ALJ held a hearing in which both a medical expert and vocational expert testified.  R. 858-67.[11]

On November 25, 2022, ALJ Patrick Kilgannon issued an unfavorable decision to Plaintiff. R. 834-50.  Specifically, the ALJ again concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525)."  R. 841(¶4).  Moreover, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following qualifications: "he can lift and carry up to 20 pounds occasionally and 10 pounds frequently, and can sit 6 hours and stand

---

[10] Note, Judge Lindsay's reasoning will be discussed in more depth *infra* as it matches this Court's rationale in remanding the case a second time.  For now, the above discussion provides an overview of the procedural posture.

[11] Specifically, the ALJ heard testimony from Dr. Morton E. Tavel (cardiologist) starting at R. 861 and VE Durr starting on R. 864.  Additionally, the Court also notes that since the relevant period regarding Plaintiff's disability ended prior to the earlier 2018 hearing, Plaintiff's counsel agreed that it was unnecessary for Plaintiff to give additional testimony at the 2022 hearing.  R. 861.

or walk 6 hours in an 8 hour workday, with normal breaks, and can occasionally climb ramps and stairs, balance, and stoop, but cannot climb ladders, ropes and scaffolds and cannot kneel, crouch and crawl and should avoid exposure to unprotected heights." *Id.* at 843 (¶5). Finally, the ALJ concluded that Plaintiff "was capable of performing past relevant work as a Manager, Internal Security (DOT 376.137-010) as generally performed." R. 849 (¶6).

Plaintiff then sought review from this Court. *See* ECF 1 [Complaint], dated February 13, 2023.

Upon the consent of both parties to the jurisdiction of a United States Magistrate Judge, I assumed the role of Presiding Judge on June 5, 2023. *See* ECF 7. On February 8, 2024, the parties filed Cross-Motions for Judgment on the Pleadings with supporting materials. *See* ECF 13-17.[12] Plaintiff seeks remand pursuant to sentence four of 42 U.S.C. Section 405(g).

## LEGAL STANDARD

### I.    Social Security Disability Standard.

Under the Act, in order to qualify for Social Security disability insurance benefits one must:

1. be insured for disability insurance benefits;

2. be beneath the age of retirement;

3. be either a United States Citizen or a foreign national meeting conditions not relevant to this instant case; and

4. be disabled as defined by the Social Security Administration (the "SSA"). 42 U.S.C. § 423(a)(1).

---

[12] For ease of reference, Plaintiff's Motion for Judgment on the Pleadings is at ECF 14, Defendant's Cross-Motion is at ECF 15, Plaintiff's Reply in Support of his Motion for Judgment on the Pleadings is at ECF 16 and the parties' Joint Statement of Facts is at ECF 17. Finally, as noted *supra*, the Administrative Transcript ("Record" or "R.") is located at ECF 13.

The SSA defines disability to mean an individual who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Zacharopoulos v. Saul*, 516 F.Supp.3d 211, 219 (E.D.N.Y. 2021).  Furthermore, this impairment must be "of such severity that [the claimant] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); *see also Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000).

To guide ALJs in making this determination, the SSA has promulgated a five-step inquiry as outlined below:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the Commissioner next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [or her] disabled without considering vocational factors such as age, education and work experience .... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his [or her] past work, the Commissioner then determines whether there is other work which the claimant can perform. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted); *see also Zacharopoulos*, 516 F.Supp.3d at 219.

The claimant bears the burden of proof at steps one through four, which then shifts to the Commissioner at step five to show the claimant is capable of working.  *Zacharopoulos*, 516 F. Supp. 3d at 219.

## II.    Standard of Review

"A motion for judgment on the pleadings should be granted if it is clear from the pleadings

'that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995)).  The Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  *Id.* (quoting 42 U.S.C. § 405(g)).

As a general matter, the Court's review of a Commissioner's decision to deny disability insurance benefits is a limited one.  District courts are cautioned not to substitute their own judgment for that of a Commissioner, nor is the reviewing district court entitled to "determine *de novo* whether [the claimant] is disabled." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citations omitted).  Instead, a reviewing court is limited to "two inquiries: (1) whether the Commissioner applied the correct legal standards in reaching a decision, and (2) whether the Commissioner's factual findings were 'supported by substantial evidence in the record as a whole.'" *Zacharopoulos*, 516 F.Supp.3d at 219 (quoting *Greek v. Colvin*, 802 F.3d 370, 374-75 (2d Cir. 2015)).

In reviewing for legal error, the district court must "be satisfied that the claimant has had a full hearing under the ... regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (alterations in original)). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotations and citations omitted).  "That is to say, the

findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and therefore, the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*.'" *Zacharopoulos*, 516 F.Supp.3d at 220 (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)).   In making this determination, the reviewing court is required to examine the record as a whole, including "contradictory evidence and evidence from which conflicting inferences can be drawn."  *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) (quotations and citations omitted).

## DISCUSSION

Following the October 20, 2022 hearing, ALJ Patrick Kilgannon, concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." R. 841.

Moreover, the ALJ also concluded that Plaintiff "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can lift and carry up to 20 pounds occasionally and 10 pounds frequently, and can sit 6 hours and stand or walk 6 hours in an 8-hour workday, with normal breaks, and can occasionally climb ramps and stairs, balance, and stoop, but cannot climb ladders, ropes and scaffolds and cannot kneel, crouch and crawl and should avoid exposure to unprotected heights." R. 843.

The Court will now address Plaintiff's contentions in turn regarding the two issues above. Upon review, this Court concludes that, though more detailed than the previous ALJ's decision, ALJ Kilgannon's decision contains the same deficiencies of failing to provide a specified "function-by-function assessment" of Plaintiff's "ability to do sustained work-related physical and

mental activities in a work setting on a regular and continuing basis." Hence, absent a more specific assessment of medical evidence for each relevant function, the Court cannot determine if the ALJ's RFC determination is supported by substantial evidence.[13]

## I.   The ALJ Was Not Required to Consider Listing 1.04

This Court concludes that the ALJ was not required to consider Listing 1.04. Plaintiff argues that "[h]ere, the medical evidence supports at least a colorable claim that Mr. Kaiser has a spinal disorder consistent with Listing 1.04(A)." Plaintiff's Mot. at 18. Glaringly, however, Plaintiff's Mot. at 20 concedes that "[i]t is also worth noting that the ALJ considered Listing 1.15 *which replaced Listing 1.04(A) on April 2, 2021*." *Id.* at 20 (emphasis added). Yet, Plaintiff then further argues that "because Mr. Kaiser's claim was filed prior to April 2, 2021, Listing 1.04(A) applies." *Id.* Upon this Court's own review of the applicable law, this Court concludes that Plaintiff's contention is incorrect here.

The Second Circuit has provided that: "[w]e apply the version of the social security regulations and rulings in effect *at the time of the ALJ's decision*." *See Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 555 (2d Cir. 2020) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (emphasis added)). Importantly, New York federal courts have provided the same proposition specifically in relation to Listing 1.04(a) at issue here. *See Jose T. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00257 EAW, 2023 WL 6209683, at *3 (W.D.N.Y. Sept. 25, 2023) ("As the Commissioner has explained in her response. . . former Listing 1.04 (Disorders of the spine) was replaced with Listing 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)) and Listing 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina). .

---

[13] To be clear, this Court recognizes that Plaintiff frames his second contention as "the ALJ's RFC determination was not supported by the evidence." *See* Plaintiff's Statement of Contentions at 2, ECF 14-2. As with Judge Lindsay's previous remand, this Court concludes that it is *unable to determine* the sufficiency of the ALJ's RFC determination without the required function-by-function analysis, as discussed *infra*.

. The ALJ issued his decision in this case after the effective date of these revisions and properly applied the revised Listings."); *Jason J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00282 EAW, 2023 WL 3734557, at *4 n.2 (W.D.N.Y. May 31, 2023) ("Listing 1.04 has since been eliminated but courts 'apply the version of the social security regulations and rulings in effect at the time of the ALJ's decision.'") (quoting *Yucekus*, 829 F. App'x at 555).

Additionally, Defendant's Cross Mot. at 6-7 correctly notes that the Federal Register provides that when the amendments to the relevant listings here became effective on April 2, 2021 "we will apply them to . . . claims that are pending on or after the effective date." *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 FR 78164-01, 2020 WL 7056412, at *78164 (Dec. 3, 2020). Moreover, this Court also agrees with the precedent cited in Defendant's Cross. Mot. at 7 for the proposition that "[t]his Court has relied on identical language elsewhere in the Federal Register in concluding that the version of the regulations in effect at the time of the ALJ decision, not the time of the application, was controlling." *See, e.g.*, *Rukaj v. Comm'r of Soc. Sec.*, No. 19-CV-1744 (KAM), 2020 WL 2797238, at *4 n.1 (E.D.N.Y. May 30, 2020) (citing to Federal Register for proposition that Court applies Regulations in effect "at the time" decision is issued); *Graham v. Comm'r of Soc. Sec.*, No. 16-CV-142 (LDH), 2017 WL 1232493, at *3 n.2 (E.D.N.Y. Mar. 31, 2017) (same).

As noted *supra*, Plaintiff concedes that the ALJ adequately considered Listing 1.15. *See* Plaintiff's Mot. at 20. Furthermore, Plaintiff does not cite *any* case law, nor has this Court been able to find any, suggesting that the older listing should apply. Therefore, because Listing 1.15 was in effect *at the time of the ALJ's decision*, this Court agrees with the ALJ's conclusion that Plaintiff's spinal impairments do not meet or medically equal a listed impairment.[14]

---

[14] This Court also notes that Plaintiff's Reply does not respond at all to the precedent noted above regarding Listing 1.15. *See* ECF 16.

## II.    This Court is Unable to Determine Whether the ALJ's RFC Determination is Supported by Substantial Evidence, Absent a More Specific Function-By-Function Assessment By the ALJ

This Court further holds that it is unable to determine whether the ALJ's RFC determination is supported by substantial evidence, absent a more specific function-by-function assessment by the ALJ and, therefore, remands on that basis.  Plaintiff argues that the ALJ's RFC determination was not supported by the evidence.  *See* Plaintiff's Mot. at 20.  Specifically, Plaintiff's Mot. at 21 argues that "the ALJ relied heavily on the opinion of Dr. Benatar.  Dr. Benatar opined that Mr. Kaiser could lift [up to] 20 pounds without specifying how frequently Mr. Kaiser could perform lifting activities."  Plaintiff further asserts that "[n]evertheless, the ALJ determined that Mr. Kaiser could lift 20 pounds occasionally (up to 2-hours in an 8-hour day) and 10 pounds frequently (up to 6-hours in an 8-hour day)."  *Id.*  Yet, "Dr. Benatar further opinioned that Mr. Kaiser cannot sit or stand in the same position for greater than 1 hour."  *Id.* (citing R. 847).  The ALJ rejected this portion of Dr. Benatar's opinion and ultimately determined that Mr. Kaiser could sit, stand, or walk for 6 hours in an 8-hour workday.  *Id.*; R. 843.

Notably, the ALJ broadly asserted without specific citations to the record that "limitations in sitting or standing to one hour are not consistent with treating exams, IMEs and consultative examinations that repeatedly note claimant to be in no acute distress with a normal mode and affect, which does not support claimant's complaints of disabling pain."  *Id.* (quoting R. 847).  Hence, Plaintiff's argument is that "it is entirely unclear how failing to be in acute distress during an examination and normal mood and affect are inconsistent with an inability to sit or stand in the same position for 1 hour."  *Id.*[15]

---

[15] To be clear, the ALJ does cite to medical evidence throughout his decision but nowhere does the ALJ do so when attempting to *quantify* the RFC specifics.  The failure to provide such a function-by-function analysis makes remand appropriate again here.  Relatedly, this Court recognizes Defendant's argument in Defendant's Mot. at 15 that "[a]s Plaintiff acknowledges, the ALJ explained why he found the limitations to shifting position unpersuasive – namely the lack of findings that Plaintiff reported severe levels of pain which would make shifting positions necessary."

Besides Dr. Benatar discussed above, Plaintiff also relies upon Dr. Waller and Dr. Fkiaras and asserts that: "[b]oth Dr. Waller and Agency examiner Dr. Fkiaras opined that Mr. Kaiser could sit or stand for no more than one hour continuously."  *See* Plaintiff's Mot. at 22 (citing R. 435-42 and R. 826-29).  To be clear, Plaintiff's assertion is only partially correct with respect to this medical evidence.  Dr. Waller does recommend such limitations when stating that: "[t]he claimant can stand for 1 hour before he has to sit secondary to pain.  He can sit for 1 hour before he has to change positions secondary to pain."  R. 441.  Yet, Dr. Fkiaras does *not* reach this same conclusion.  Rather, Dr. Fkiaras simply notes that "*[t]he claimant states* he has difficulty standing for more than an hour and sitting for more than an hour," but this is not the conclusion of Dr. Fkiaras himself.  R. 826 (emphasis added).  With that being said, Dr. Fkiaras *does* conclude that: "the claimant has a *moderate limitation* lifting, carrying, pushing, pulling and bending.  The claimant has a moderate to severe limitation squatting, kneeling and crouching.  The claimant is restricted from activities which require exposure to unprotected heights."  R. 829 (emphasis added).

While this Court is certainly cognizant of the differing medical opinions at issue here and the broad deference to the ALJ's decision under the "substantial evidence" standard, this Court agrees with the line of precedent in Judge Lindsay's previous remand recommendation, which outlines the required function-by-function assessment that ALJs must perform when providing the RFC.  *See Kaiser*, 2021 WL 4463620, at *11 (citing SSR 96-8p) ("[t]he RFC assessment must first identify the individual's functional limitations or restrictions and *assess his or her work related abilities on a function-by-function basis*, including the functions in paragraphs (b), (c) & (d) of 20 C.F.R. §§ 404.1545 and 416.945.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."); *Perez v. Berryhill*, No. 17-CV-

---

Again, however, that does not cure the ALJ's deficiency of the lack of a specific function-by-function analysis and supporting medical evidence quantifying the amount of hours that Plaintiff may perform each function.

3045, 2019 WL 1324949, at *7 (E.D.N.Y. Mar. 25, 2019) (citing SSR 96-8p); *see also Myers v. Apfel*, 238 F.3d 617, 620-21 (5th Cir. 2001) ("Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. 'Each function must be considered separately' ") (citation omitted); *Reynolds v. Commissioner of Social Security*, No. 12-CV-1167S, 2019 WL 2020999, at *6 (W.D.N.Y. May 8, 2019) (remand necessary where "the ALJ's RFC discussion is entirely conclusory: it simply recounts the medical evidence and concludes that Plaintiff can perform light work with some limitations. There is no discussion of how the evidence supports the ALJ's conclusions or any discussion of Plaintiff's ability to maintain sustained work activity.") (citations omitted); *Murphy v. Barnhart*, No. 00Civ.9621(JSR)(FM), 2003 WL 470572, at *9 (S.D.N.Y. Jan. 21, 2003) ("Under the regulations, the ALJ also must analyze a claimant's RFC on a function-by-function basis.").

To be clear, this Court recognizes that the failure to provide a function-by-function analysis does not always constitute reversible error. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that *remand is not necessary merely because an explicit function-by-function analysis was not performed.*") (citations omitted) (emphasis added). Notably, "[r]emand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, *despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review*." *Id.* at 177-78 (emphasis added) (citing *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir.2001) (remanding where "the

ALJ failed to resolve the inconsistencies in the evidence" regarding claimant's residual functional capacity)).

Here, this Court concludes such "contradictory evidence" and "other inadequacies" exist which warrants remand. Importantly, Defendant's Cross Mot. at 12 summarizes the medical opinions that the ALJ decision relies upon, which shows such inadequacies. First, Defendant's Cross Mot. at 12 notes that the ALJ relied upon the opinion of Dr. Tavel who indicated that Plaintiff had no limitations from his cardiac impairments. Defendant's Cross. Mot is correct that the ALJ gave "good weight" to Dr. Tavel's opinion. R. 845. However, Dr. Tavel's opinion has no relation to the knee and back pain that Plaintiff alleges, which is the main focus of his ailments.

Second, Defendant notes that the ALJ relied upon Dr. Fkiaras' opinion that Plaintiff had "moderate" limitations to lifting, carrying, pushing, and bending as well as "moderate to severe" limitations squatting, kneeling, and crouching. *See* Defendants' Cross Mot. at 12. However, Defendant omits the fact that the ALJ then *criticizes* Dr. Fkiaras' opinion as "vague" and indicates that the ALJ only gave "some weight" to this opinion. R. 845. Specifically, the ALJ states that he gave: "*some weight* to Dr. Fkiaras' assessment since the opinion was based upon an in-person evaluation that noted limitations that were generally consistent with the doctor's exam findings, but not more weight since the doctor *failed to provide specific quantifiable functional limitations and used vague terms such as moderate or marked.*" *Id.* (emphasis added). Indeed, Dr. Fkiaras never attempted to quantify how many hours Plaintiff should stand or sit while working and the ALJ made it clear that Dr. Fkiaras' opinion was not a strong basis for the ALJ's decision overall.

Third, Defendant asserts that the ALJ relied upon *four* opinions from Dr. Benatar (based upon four separate evaluations). *See* Defendants' Cross Mot. at 12. Defendant asserts that these opinions indicate that Plaintiff could lift 20 pounds and/or perform "light work." *Id.* (citing R.

453, 458, 473, 492).  Importantly, the ALJ states that he gave Dr. Benatar's opinions "good weight" but then immediately proceeds to reject Dr. Benator's one-hour standing and sitting limitations and notes that: "limitations in sitting or standing to one hour are not consistent with treating exams, IMEs and consultative examinations that repeatedly note claimant to be in no acute distress with a normal mood and affect, which does not support claimant's complaints of disabling pain."  R. 847. Glaringly, the ALJ did not include a *single citation* at the end of this sentence.  Presumably, the ALJ is referring to the evidence he discussed earlier in his decision, but nowhere does the ALJ ever point to a *single* medical opinion, MRI diagnosis or any other medical evidence that *quantifies* Plaintiff's ability to sit 6 hours and stand or walk for 6 hours with normal breaks.

Next, Defendant emphasizes that the ALJ also relied upon Plaintiff's own testimony that Plaintiff could lift 30 to 40 pounds without bending and that Plaintiff stated to Dr. Fkiaras that he could lift 10 to 40 pounds at least on some days.  *See* Defendant's Cross Mot. at 12 (citing R. 848 which in turn relies upon R. 206 and R. 826).  However, when read in full, it is clear that Plaintiff *did not remember* the last time he lifted 30-40 pounds.  R. 206-07.  To be clear, Plaintiff did testify that he "probably" could lift this amount and also stated that he lifts "maybe 10-20 pounds" on a regular basis.  R. 206-07.  As for Plaintiff's statement to Dr. Fkiaras, Plaintiff stated that he "*has difficulty* walking three blocks, climbing one flight of stairs, lifting anywhere from 10-40 pounds, *depending on how he feels that day.*"  R. 826 (emphasis added).  Hence, these statements from Plaintiff further show that the ALJ failed to cite evidence specifically supporting and/or quantifying that Plaintiff could sit for 6 hours and stand or walk for 6 hours in an 8-hour workday.

Ultimately, the key deficiency in the ALJ's decision is that, while more detailed than the previous ALJ, the ALJ here still "determined, in a conclusory manner, without any discussion of the seven strength demands necessary, that Plaintiff would be able to work an eight-hour day.

Absent a more specific assessment, [this] Court is unable to determine if the ALJ's RFC determination is supported by substantial evidence." *Kaiser*, 2021 WL 4463620, at *13. Hence, remand is appropriate for the ALJ to conduct the necessary analysis of the seven strength demands.

Additionally, further buttressing this Court's holding above, there is also some overlap to Plaintiff's argument that "an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly submitted his own opinion for that of a physician, and has committed legal error." *See* Plaintiff's Mot. at 21 (citing *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); *Zorilla v. Chater*, 915 F. Supp. 662, 666-67 (S.D.N.Y. 1996) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required.")).

Conversely, Defendant's Cross Mot. at 11 argues that "[a]s a threshold matter, Plaintiff's argument is premised on the proposition that determining RFC is a medical finding, and therefore requires a supporting opinion," (citing Plaintiff's Mot. at 21), and that "this is not correct." Specifically, Defendant asserts that the Second Circuit has found that an RFC was supported by substantial evidence even though the ALJ accorded little weight to the only medical opinions in the record. *See* Defendant's Cross Mot. at 11 (citing *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "[t]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence.") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (stating that an ALJ's conclusions need not "perfectly correspond with any of the opinions of medical sources cited in this decision" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with

the record as a whole")).  Finally, this Court also agrees that the Second Circuit has recognized that an "RFC finding is administrative in nature, not medical," meaning that an ALJ is not making a medical determination when he assesses a claimant's RFC.  *See Curry v. Comm'r of Soc. Sec.*, No. 20-1472, 855 F. App'x. 46, 48 n.3 (2d Cir. 2021).

The problem with Defendant's position is that, notwithstanding the Second Circuit's decision in *Schillo*, multiple New York federal courts have distinguished *Schillo* where *no medical opinions* in the record support the ALJ's conclusion and the ALJ did not cite specific medical evidence in the record when discounting the medical opinions present.  *See Hart v. Comm'r of Soc. Sec.*, No. 21CIV3104NSRAEK, 2023 WL 2873247, at *8 (S.D.N.Y. Feb. 16, 2023), *report and recommendation adopted*, No. 21CV03104NSRAEK, 2023 WL 2424129 (S.D.N.Y. Mar. 9, 2023) (holding *Schillo* did not control where "the only medical opinion evidence in the record— that of Dr. Graham, a consultative examiner—was rejected by the ALJ in relevant part. . .[a]nd none of the medical records considered by the ALJ contain any assessment of Plaintiff's functional limitations that may have served as a basis for the ALJ's RFC."); *Tanya Y. v. Comm'r of Soc. Sec.*, No. 1:20-CV-712-LJV, 2022 WL 1115458, at *5-6 (W.D.N.Y. Apr. 14, 2022) ("This is not a case like *Schillo*. . . [h]ere, in contrast, the ALJ supported his decision with only conclusions and did not cite specific record evidence as a basis for discounting the treating source opinions. . . Although the ALJ was not required to accept everything about which Dr. LaBarber and Dr. Nickolova opined, . . . —or even about which they both agreed—*he was required to support his assessment of their opinions with record evidence and to explain why he disagreed with two treating sources who agreed with one another.*") (emphasis added).

Here, as discussed *supra*, the ALJ cites to no specific evidence after he notes that: "limitations in sitting or standing to one hour are not consistent with treating exams, IMEs and

consultative examinations that repeatedly note claimant to be in no acute distress with a normal mood and affect, which does not support claimant's complaints of disabling pain." R. 847. Notably, *any* doctor in this case that quantified the number of hours Plaintiff could sit and stand or walk that the ALJ relied upon (i.e. Dr. Benatar and Dr. Waller) each confirmed that Plaintiff should not sit or stand in the same position for greater than 1 hour. R. 847.[16] Moreover, not a *single doctor* arrived at the ALJ's total of 6 hours. Finally, even taking the ALJ's conclusion at face value that certain medical notes reveal "no acute distress with a normal mood and affect," such notes again do not quantify *how long* Plaintiff may actually sit, stand or walk. Hence, despite the precedent discussed above that the ALJ's decision need not match any single medical opinion, the lack of such support here, at minimum, further compounds the problem of the ALJ's failure to assess the seven function limitations discussed earlier.

To clarify, this Court also agrees with Judge Lindsay's previous remand report and recommendation that: "the record does not lead to the definitive conclusion that Plaintiff is disabled." *Kaiser*, 2021 WL 4463620, at *14. Again, however, the lack of *any* medical opinions quantifying the ALJ's 6-hour determination for sitting, standing or walking in an 8-hour workday still magnifies the deficiency noted *supra* of the ALJ's failure to provide a function-by-function analysis for the RFC determination. Analogous to Judge Lindsay's remand recommendation, "the ALJ is not free to substitute his own interpretation of the medical evidence in the record for that of an opinion from an acceptable medical source." *Id.* at 13 (citations omitted). Therefore, this matter is once again remanded for the Commissioner to properly assess and articulate Plaintiff's

---

[16] This Court also notes that Dr. Obedian mentioned *supra* reported that Plaintiff is unable to sit, stand and walk or engage in postural activities. *See* R. 1781-84. However, the ALJ is not required to rely upon Dr. Obedian's opinion so this Court's main focus is on the medical opinions and evidence that the ALJ *did* rely upon. With that being said, Dr. Obedian is an example of yet another medical opinion that does not reach the ALJ's total of 6 hours for sitting and standing or walking.

RFC with sufficient specificity and present the evidence upon which the Commissioner relies to support the RFC determination in a proper function-by-function RFC analysis.[17]

## CONCLUSION

For the reasons set forth herein, this Court GRANTS Plaintiff's Motion for Judgment on the Pleadings in part, DENIES Defendant's Cross-Motion for Judgment on the Pleadings, and remands this matter to the Commissioner for further proceedings consistent with this Memorandum and Order.

**SO ORDERED.**

 /s/ STEVEN TISCIONE
Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
        May 31, 2024

---

[17] Give that this Court's holdings above provide a sufficient basis for remand, this Court need not address Plaintiff's additional contention that "[t]he ALJ failed to properly evaluate Mr. Kaiser's complaints of pain." *See* Plaintiff's Statement of Contentions at pdf page 3, ECF 14-2. Indeed, Judge Lindsay's previous remand Report and Recommendation similarly provided that "[b]ecause the Court concludes that the ALJ did not properly assess and articulate Plaintiff's RFC with sufficient specificity, or, present the evidence upon which the Commissioner relies to support the RFC determination, the Court declines to address Plaintiff's contention that the ALJ failed to properly assess his subjective complaints." *Kaiser v. Saul*, 2021 WL 4463620, at *14 (citations omitted). Finally, for comprehensiveness, this Court also notes that Plaintiff here "filed his claim prior to March 27, 2017, at which time the treating physician rule was still in effect." *See Sylvester v. Comm'r of Soc. Sec.*, No. 20-CV-2903 (EK), 2023 WL 6121763, at *3 (E.D.N.Y. Sept. 19, 2023) (citations omitted). "Under that rule, an ALJ must give a treating physician's opinion 'controlling weight' if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Id.* (citations omitted). Here, however, this Court already noted the opinions from Dr. Debora Mottahedeh above, Plaintiff's treating pain management specialist, and Plaintiff's primary care provider, Dr. July Gaysynsky. Notably, neither doctor addresses the RFC function-by-function analysis deficiency at issue. Nor does either party argue the treating physician rule issue here. Therefore, no further analysis of the treating physician rule is required.